**UNITED STATES of America, Appellee,**

v.

**Bruce H. THOMPSON, Appellant.**

**No. 83–1964.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 26, 1984.
Decided March 30, 1984.

Klamen & Danna, David A. Gamache, Jr., Clayton, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., Debra E. Herzog, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

McMILLIAN, Circuit Judge.

Bruce H. Thompson appeals from a final judgment entered in the District Court[1] for the Eastern District of Missouri upon a jury verdict finding him guilty of two counts of passing, with the intent to defraud, counterfeit Federal Reserve Notes in violation of 18 U.S.C. § 472 (1976). Appellant was sentenced to two concurrent terms of five years imprisonment. For reversal appellant argues that (1) the government's use of peremptory challenges to remove almost all black venirepersons from the jury panel on the basis of assumed racial affinity to designated black alibi witnesses violated his sixth amendment rights; (2) the district court erred in denying his motions to suppress in-court identifications; (3) the district court erred in allowing a Secret Service agent to testify as an expert on counterfeit currency; (4) the district court erred in admitting evidence of other crimes committed by appellant; and (5) the district court erred in remarking to the jury during voir dire that he "ought to know" the names of the two Secret Service agents testifying for the government. For the reasons discussed below, we affirm the judgment of the district court.

In October 1982, the St. Louis City Police Department contacted the United States Secret Service regarding counterfeit bills which were being passed in the St. Louis

1. The Honorable John K. Regan, United States Senior District Judge for the Eastern District of Missouri.

area. Upon investigation, a Secret Service agent traced one $50 counterfeit bill to a St. Louis gas station and interviewed the cashier of the station on October 22, 1982. The cashier told the agent that she remembered changing the bill for a customer who drove up in a pink Cadillac on the evening of Friday, October 8, 1982, and thinking at the time that something was wrong with the bill. She was able to identify the bill because she had accidentally torn it while handling it and had patched it with cellophane tape. The cashier described the customer as a thin, brown skinned man about 6'2"–6'3". The agent showed her an array of six photographs and asked if she recognized anyone. She picked out a photograph of appellant and identified him as the customer who had given her the $50 bill. She was also shown a photograph of a car and identified it as the car driven by appellant.

Another counterfeit bill, this one a $100 bill, was traced to a flower shop in St. Louis. The proprietor of the shop told the agent at an interview on October 23, 1982, that she remembered the customer who gave her the bill on Saturday, October 9, 1982, in payment for a floral arrangement costing approximately $30. When she took the bill to the bank on the following Monday, the teller told her that it was counterfeit. The proprietor described the customer as a tall, slender built black man of average complexion with short curly hair. The agent showed her the six photograph array from which she picked two photographs, one of which was of appellant, as possibly being the customer. On March 22, 1983, the proprietor of the flower shop viewed a lineup of five men at the St. Louis Police Department in the presence of defense counsel and made a positive identification of appellant.

Finally, a third counterfeit bill was traced to the shoe department at the Famous Barr department store at Northwest Plaza in St. Louis County. On October 26, 1982, the investigating agent interviewed a salesclerk from the shoe department who told the agent that he and his supervisor had called store security on October 9, 1982, regarding a suspicious bill which had been given to them by two black male customers. Upon looking at the photograph array, the salesclerk recognized the photograph of appellant. The salesclerk also identified appellant at the lineup at the St. Louis Police Department on March 22, 1983.

On April 7, 1983, appellant was indicted for two counts of passing counterfeit bills, based on the gas station and the flower shop incidents. The venire panel consisted of thirty-one persons, seven of whom were black. During voir dire the government used five of its six peremptory challenges to strike black venirepersons. Upon inquiry by the district court, the government stated that it struck these prospective jurors on the basis of the belief that they would be more sympathetic to appellant's designated black alibi witnesses. One of the remaining two black jurors was removed by appellant because of her relation to a law enforcement officer.

At trial, the investigating Secret Service agent testified as an expert witness that the two subject bills were counterfeit. The gas station cashier and the flower shop proprietor, as well as the Famous Barr shoe salesclerk, made in-court identifications of appellant. Another Secret Service agent, who had been investigating counterfeit activity in Kansas City during October 1982, testified that in the course of his investigation he interviewed appellant several times and that appellant admitted involvement in the Kansas City counterfeit activity and possession of counterfeit bills in the early part of October 1982.

Appellant testified on his own behalf presenting an alibi defense. Four defense witnesses, including appellant's grandmother and seventeen-year-old sister, supported appellant's alibi. The jury found appellant guilty on both counts and this appeal followed.

■ Appellant's first argument on appeal is that the government's use of peremptory challenges to remove almost all

black venirepersons from the jury panel violated his sixth amendment rights. The government's use of five of its six peremptory challenges to remove five of the seven prospective black jurors was based on the assumed racial affinity of these prospective jurors to designated black alibi witnesses. In *United States v. Childress*, 715 F.2d 1313, 1318 (8th Cir.1983) (banc), this court reluctantly held that there is no sixth amendment exception to the Supreme Court holding in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (evidence that the government used its peremptory challenges to remove all the black prospective jurors from the jury panel in a single case will not support a claim of racial discrimination under the equal protection clause). We were unable to conclude that the sixth amendment guarantee to a venire panel drawn from a fair cross section of the community recognized in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), extended to selections of the petit jury itself. *United States v. Childress*, 715 F.2d at 1318–20. *Contra McCray v. Abrams*, 576 F.Supp. 1244 (E.D.N.Y.1983), *appeal docketed*, No. 84–2062 (2d Cir. Feb. 9, 1984). *See also McCray v. New York*, —— U.S. ——, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983) (mem.) (Marshall, J., dissenting); *People v. McCray*, 57 N.Y.2d 542, 443 N.E.2d 915, 457 N.Y.S.2d 441 (1982) (Meyer, J., dissenting), *cert. denied*, —— U.S. ——, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); *People v. Payne*, 106 Ill.App.3d 1034, 62 Ill.Dec. 744, 436 N.E.2d 1046 (1982), *rev'd*, 99 Ill.2d 135, 75 Ill.Dec. 643, 457 N.E.2d 1202 (1983); *People v. Payne*, 99 Ill.2d 135, 75 Ill.Dec. 643, 457 N.E.2d 1202 (1983) (Simon, J., dissenting); *Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499 (state constitutional case using sixth amendment analysis), *cert. denied*, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *People v. Wheeler*, 22 Cal.3d 258, 583 P.2d 748, 148 Cal.Rptr. 890 (1978) (state constitutional case using sixth amendment analysis). We thus must rule appellant's first point against him.

Appellant's remaining claims of error warrant little discussion. The investigating agent was clearly qualified to testify as an expert on the counterfeit nature of the bills in question by his knowledge, experience and training. Fed.R.Evid. 702. The statements made by appellant concerning his involvement in the Kansas City counterfeit activity were evidence of other crimes which met all the requirements for admissibility to show intent, preparation, plan, knowledge and absence of mistake under Fed.R.Evid. 404(b). The evidence was relevant to a material issue; the other crimes were similar in kind and close in time to the charged crime; the evidence was clear and convincing and its probative value was not outweighed by its prejudicial effect. *See, e.g., United States v. Burchinal*, 657 F.2d 985, 993 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981). The out-of-court as well as the in-court identifications were admissible. There is no indication in the record that the photographic display and lineup procedures were impermissibly suggestive so as to create a likelihood of misidentification or taint the subsequent in-court identifications. *See Manson v. Brathwaite*, 432 U.S. 98, 113–16, 97 S.Ct. 2243, 2252–54, 53 L.Ed.2d 140 (1977). Finally, we see no error in the district judge's remark that he "ought to know" the two Secret Service agents' names but did not, which he made while questioning the jury during voir dire whether any of them knew the assistant United States attorney, appellant, defense counsel or the two Secret Service agents who would testify in the case.

Accordingly, we affirm the judgment of the district court.