**James H. BELL, Jr., Petitioner–Appellee,**

v.

**Dennis BAKER, Respondent–Appellant.**

**No. 91–3378.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 1, 1991.

Decided Jan. 23, 1992.

Rehearing and Rehearing En Banc Denied March 27, 1992.

Harry R. Reinhart (argued & briefed), Columbus, Ohio, for James H. Bell, Jr.

Gerald E. Dailey (argued & briefed), Lee Fisher, Ohio Atty. Gen., Columbus, Ohio, for Dennis Baker.

Before KEITH, NELSON and SILER, Circuit Judges.

SILER, Circuit Judge.

Petitioner-appellee was granted a writ of habeas corpus under 28 U.S.C. § 2254 by the district court. Respondent-appellant is apparently the Warden of the penal institution having custody of the petitioner.[1] For reasons set out herein, we reverse the ruling of the district court.

**I.**

Petitioner, a black man, was convicted in Ohio for aggravated murder of a white man and was sentenced in 1984 to a term of imprisonment of life with no possibility of parole for twenty years. At trial, the venire was composed of three black persons and twenty-one white persons. Each side was entitled to four peremptory challenges. The prosecutor used his challenges to exclude all three blacks and one white. Defense counsel objected to the systematic exclusion of black jurors. The prosecutor did not explain why he made those challenges. However, as the trial occurred before the decision in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the court followed *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), in overruling the objections by the defense.

---

**1.** The original respondent was Warden Terry L. Morris. He was succeeded as a respondent by Warden Anthony J. Brigano by order of the district court. The record below does not men-tion how Baker was substituted as a respondent, but the attorneys have all named him as a party herein.

Appeals were taken to the Ohio Court of Appeals and the Supreme Court of Ohio, raising, *inter alia,* the constitutional issue, under the Sixth and Fourteenth Amendments, that there was a systematic exclusion of black jurors from the petit jury. On October 16, 1985, the Court of Appeals denied the appeal on the merits. On January 22, 1986, the Supreme Court of Ohio dismissed the appeal for failure to state a substantial constitutional question.

On April 30, 1986, *Batson* was decided. The petition for a writ of habeas corpus was filed in the district court later in 1986. The resolution of the case was delayed, in part, to await the ruling in *Holland v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). In that case, the Supreme Court held that the Sixth Amendment to the Constitution does not preclude the systematic exclusion of a particular group from a petit jury. Thus, the right under the Equal Protection Clause of the Fourteenth Amendment to the Constitution from *Batson,* that there cannot be a systematic exclusion of a particular race from the petit jury, was not extended to the right under the Sixth Amendment to trial by an impartial jury.

Subsequently, the district court upheld the report and recommendation by the magistrate that a writ of habeas corpus should issue. The basis for its decision was that the prosecution's systematic use of its peremptory challenges to exclude black jurors from the petit jury violated the petitioner's Sixth Amendment right to a jury drawn from a fair cross section of the community under *Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985), *vacated sub nom. Michigan v. Booker,* 478 U.S. 1001, 106 S.Ct. 3289, 92 L.Ed.2d 705, *reinstated,* 801 F.2d 871 (6th Cir.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). It held that when *Holland* overruled *Booker,* this established a new rule of law, and, therefore, like *Batson,* it was not retroactive in petitioner's case. Thus, as petitioner's case was not final by the time *Booker* was decided in 1985, then *Booker* mandated that there be no systematic exclusion of blacks on the petit jury as finally selected,

under the Sixth Amendment to the Constitution.

## II.

It is obvious that as the petitioner's case became final on direct appeal before *Batson* was decided, the rule from *Batson* does not apply, as it is not retroactive. *See Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam). What is ironic, however, is that if the writ is upheld, as both counsel at oral argument admitted, *Batson* would apply at the retrial and *Booker* probably would not, as it is no longer the law.

The key issue is whether *Holland* established a new rule of criminal procedure. If it did, then, unless it falls within an exception to the general rule, it is not applicable to those cases which became final before the new rule was announced. *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1989). Those exceptions listed in *Teague* are not applicable here. *Teague* involved a similar legal issue, although the case was final in 1983 and it originated in Illinois, which did not follow *Booker* or *McCray v. Abrams,* 750 F.2d 1113 (2d Cir.1984), *vacated and remanded,* 478 U.S. 1001, 106 S.Ct. 3289, 92 L.Ed.2d 705, *on remand case dismissed by stipulation of the parties* (1986).

## III.

When *Holland* was decided, it appeared to create a new rule of criminal procedure in the Sixth and Second Circuits, for they were following the decisions in *Booker* and *McCray.* However, other circuits had not recognized that the Sixth Amendment required a fair cross section of the community to be represented on a petit jury. *See, e.g., United States v. Rodriquez–Cardenas,* 866 F.2d 390, 393 (11th Cir.1989), *cert. denied,* 493 U.S. 1069, 110 S.Ct. 1110, 107 L.Ed.2d 1017 (1990); *Teague v. Lane,* 820 F.2d 832, 841 (7th Cir.1987) (en banc), *aff'd,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *United States v. Salamone,* 800 F.2d 1216, 1219 (3d Cir.1986); *United States v. Thompson,* 730 F.2d 82 (8th Cir.), *cert. denied,* 469 U.S. 1024, 105 S.Ct. 443,

**402**

83 L.Ed.2d 369 (1984); *Weathersby v. Morris*, 708 F.2d 1493, 1497 (9th Cir.1983), *cert. denied*, 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984).

Nevertheless, *Holland* did not establish a new rule nationally, nor was it a new rule in the opinion of the Supreme Court. The majority opinion in *Holland* states that *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); and *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), disclaimed the application of the fair cross section rule to petit juries. *See* 493 U.S. at 482–483, 485–486, 110 S.Ct. at 808–809, 810. Thus, the decisions in *McCray* and *Booker* were not recognized by the Supreme Court, but were an anomaly of the law in its view.

The petitioner urges that it is not "evenhanded justice" for courts to deny the retroactivity of *Batson* and yet require the retroactivity of *Holland*. This was a difficult decision for the district court, and it is difficult for this court, considering the precedent for a period of time in *Booker*. However, it is the decision of the Supreme Court that *Holland* did not establish a new rule of procedure. Moreover, any time the Court rules on the retroactivity of a decision, there is always some litigant who feels it is inequitable in his case. *See Teague*, 489 U.S. at 302–305, 109 S.Ct. at 1070–1072. One could argue the other side of the issue, that is, is it fair for the petitioner here to receive a new trial when defendants similarly situated from other states outside the Second and Sixth Circuits could not obtain new trials?

The answer to that question is in the negative, especially in view of the findings by the magistrate that the "conviction was amply supported by the evidence" and no constitutional error caused the conviction of an innocent person.

## CONCLUSION

Therefore, the decision of the district court is REVERSED with directions to vacate the writ of habeas corpus.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the majority opinion. In view of the final paragraph of the dissent, however, I would like to add this: Nowhere in the majority opinion can I discern any intimation at all that the panel which decided *Booker v. Jabe*, 775 F.2d 762 (6th Cir.1985), "engaged in a patently lawless procedural practice" or "did not follow their charge to uphold the principles of the Constitution." I do not believe that the *Booker* panel intended to do any such thing.

On the contrary, the *Booker* panel expressly recognized that "our authority as an intermediate court is limited," *id.* at 767—and for that reason, even though it disagreed with the Supreme Court's decision in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the *Booker* panel held that the prosecutor's use of peremptory challenges to excuse prospective jurors on the basis of their race, "although egregious conduct, did not violate the Equal Protection Clause as interpreted in *Swain*." *Booker*, 775 F.2d at 767. These are obviously not the words of a lawless or unprincipled court.

At the time *Booker* was decided, there was no Supreme Court precedent expressly foreclosing the conclusion that the Sixth Amendment prohibits the exclusion of cognizable groups from the petit jury through peremptory challenges. The *Booker* panel thus felt free to conclude that the Sixth Amendment does prohibit such exclusion— and the panel presented about as able an argument in support of this view as one could imagine, given the circumstances to which the Supreme Court was subsequently to allude in *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). This branch of the holding in *Booker* was no more the act of a renegade court than the first branch was.

It is indisputable, nonetheless, that the second branch of the holding in *Booker* cannot be reconciled with what, as we now know, the Supreme Court believes the Sixth Amendment has always said. As a panel of an intermediate court, we are no

less bound by *Holland* than the *Booker* panel was bound by *Swain.*

Here are some of the things that *Holland* tells us about what the Supreme Court thinks the proper bounds of the Sixth Amendment have always been:

"A prohibition upon the exclusion of cognizable groups through peremptory challenges has no conceivable basis in the text of the Sixth Amendment, is without support in our prior decisions, and would undermine rather than further the constitutional guarantee of an impartial jury.

\*    \*    \*    \*    \*    \*

[T]o say that the Sixth Amendment deprives the State of the ability to 'stack the deck' in its favor is not to say that each side may not, once a fair hand is dealt, use peremptory challenges to eliminate prospective jurors belonging to groups it believes would unduly favor the other side. Any theory of the Sixth Amendment leading to that result is implausible. The tradition of peremptory challenges for both the prosecution and the accused was already venerable at the time of Blackstone ... was reflected in a federal statute enacted by the same Congress that proposed the Bill of Rights ... was recognized in an opinion by Justice Story to be part of the common law of the United States ... and has endured through two centuries in all the States.... The constitutional phrase 'impartial jury' must surely take its content from this unbroken tradition.

\*    \*    \*    \*    \*    \*

The rule we announce today is not only the only plausible reading of the text of the Sixth Amendment, but we think it best furthers the Amendment's central purpose as well. Although the constitutional guarantee runs only to the individual and not to the State, the goal it expresses is jury impartiality with respect to both contestants: neither the defendant nor the State should be favored. This goal, it seems to us, would positively be obstructed by a petit jury cross-section requirement which ...

would cripple the device of the peremptory challenge.

\*    \*    \*    \*    \*    \*

Since *only* the Sixth Amendment claim, and not the equal protection claim, is at issue, the question before us is not whether the defendant has been unlawfully discriminated against ... or whether the excluded jurors have been unlawfully discriminated against ... but whether the defendant has been denied the right to 'trial ... by an impartial jury.' The earnestness of this Court's commitment to racial justice is not to be measured by its willingness to expand constitutional provisions designed for other purposes beyond their proper bounds." *Holland v. Illinois,* 493 U.S. 474, 478–488, 110 S.Ct. 803, 806–811, 107 L.Ed.2d 905, *passim* (citations and footnote omitted, emphasis in original).

The Supreme Court having told us (1) that *Holland* represents "the only plausible reading of the text of the Sixth Amendment," (2) that a reading such as that adopted in the second branch of *Booker* "has no conceivable basis in the text of the Sixth Amendment," (3) that the latter reading is "without support in the [Supreme Court's] prior decisions," (4) that it cannot be reconciled with our "unbroken tradition" of peremptory challenges, and (5) that such a reading "would undermine the constitutional guarantee of an impartial jury," it is simply inconceivable to me that the Supreme Court could have thought it was establishing "a new rule of criminal procedure" in *Holland,* thereby making it proper for the second branch of *Booker* to be applied in cases such as the one now before us. The language of *Holland* is "clear, direct, and unequivocal," see *Booker,* 775 F.2d at 767, quoting *McCray v. Abrams,* 750 F.2d 1113, 1124 (2d Cir.1984), and in my view it rules out any possibility of our saying that *Holland* represents a "new rule." Whether we agree with *Holland* or not, I think we are obliged to follow its rationale.

DAMON J. KEITH, Circuit Judge, dissenting.

A question of fundamental fairness lay at the root of this appeal. Because I find

that the district court correctly answered that question and properly granted the writ of habeas corpus to petitioner-appellee, James H. Bell, Jr. ("Petitioner Bell" or "Bell"), I must dissent.

## I.

Petitioner Bell, a black man, was convicted by an all white jury and sentenced to a term of life imprisonment without the possibility of parole for twenty years. The prosecutor used three of his four peremptory challenges to exclude all of the potential black jurors from the venire. When defense counsel objected and challenged this apparent discriminatory exclusion of black jurors, the prosecutor offered no explanation for his action. The trial court then overruled the objection under the principles enunciated in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Subsequent appeals by the defense challenging the prosecutor's action under both the Sixth and Fourteenth Amendments failed in the state court system of Ohio.

In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the United States Supreme Court adopted a virtually irrebuttable presumption that the prosecution is exercising his peremptory challenges to obtain a fair and impartial jury. *Id.* at 222, 85 S.Ct. at 837. The Court refused to apply the equal protection clause to a prosecutor's actions solely on the basis of one case. *Id.* When the Supreme Court finally overhauled this standard in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (filed April 30, 1986), Bell's conviction had become final. Thus, Petitioner Bell could not avail himself of Fourteenth Amendment protection under the now proper *Batson* standard.

Before Petitioner Bell's conviction was final, however, this Court decided *Booker v. Jabe*, 775 F.2d 762 (6th Cir.1986). *Booker* held that the Sixth Amendment, in its guarantee of a trial by an impartial jury, prohibited racial discrimination during the jury selection process. It is not disputed that *Booker* was the controlling precedent in this Circuit when Bell's state court appeals were exhausted.

This was the state of the law on which Bell filed his federal habeas petition citing both Sixth and Fourteenth Amendment violations by the state prosecutor. The United States Magistrate correctly concluded that Bell could not proceed under the principles of *Batson*. However, the Magistrate found that his petition could proceed under this Court's precedent in *Booker v. Jabe*. The district court adopted the Magistrate's report and recommendation.

The Supreme Court has subsequently overruled *Booker* in *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). Central to this appeal is whether this Court can now apply *Holland* retroactively. "New constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1988). Given this principle of "retroactivity," the majority correctly framed the principal issue for our consideration: "whether *Holland* established a new rule of criminal procedure."

## II.

The Supreme Court hears cases by writ of certiorari. 28 U.S.C. § 1254. While neither controlling nor fully measuring the Court's discretion, the Court considers among its reasons for taking cases "[w]hen the United States court of appeals has rendered a decision in conflict with the decision of another United States court of appeals in the same matter." Sup.Ct.R. 10.-1(a). This supports the thesis that the Supreme Court often waits until several circuits have exhausted or disagreed with regard to an issue of constitutional law before addressing it on the merits in an appropriate case. This practice most assuredly underlay the Court's ruling in *Holland v. Illinois*.

The several circuits that had discussed the issue split as to the propriety of the Sixth Amendment's application to race discrimination in the jury selection process when the Supreme Court denied certiorari

by the state of Michigan in *Michigan v. Booker*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).[1] In *McCray v. Abrams*, 750 F.2d 1113 (2d Cir.1984), the Second Circuit held that the Sixth Amendment required that a fair cross section of the community be represented on a petit jury and thus prohibited race discrimination during the selection of the venire. The Eighth and Ninth Circuits, however, did not recognize such a prohibition, and the Supreme Court denied the writs of certiorari in each of those appeals as it did in *Booker*. *See United States v. Thompson*, 730 F.2d 82 (8th Cir.), *cert. denied*, 469 U.S. 1024, 105 S.Ct. 443, 83 L.Ed.2d 369 (1984); *Weathersby v. Morris*, 708 F.2d 1493 (9th Cir.1983), *cert. denied*, 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984). Following our affirmative pronouncement in *Booker*, the Third, Seventh and Eleventh circuits found no such mandate in the Sixth Amendment. *See, e.g., United States v. Rodriquez–Cardenas*, 866 F.2d 390, 393 (11th Cir.1989), *cert. denied*, 493 U.S. 1069, 110 S.Ct. 1110, 107 L.Ed.2d 1017 (1990); *Teague v. Lane*, 820 F.2d 832, 841 (7th Cir.1987) (en banc), *aff'd on other grounds*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *United States v. Salamone*, 800 F.2d 1216, 1219 (3d Cir.1986). Only then did the Supreme Court confront the Sixth Amendment issue in *Holland*.

In *Holland*, the Supreme Court made its first authoritative pronouncement that the Sixth Amendment to the United States Constitution does not preclude the systematic exclusion of one racial group from a petit jury. *See Holland*, 493 U.S. at 481, 110 S.Ct. at 807. The high court noted that *Batson* established that claims of this character are within the auspices of the Fourteenth Amendment and refused to extend the Sixth Amendment's mandate of a trial by impartial jury to cover that right. *See id.* at 479–84, 110 S.Ct. at 806–809. Thus, *Holland v. Illinois* overruled *Booker* because no clear constitutional rule of proce-

dure had manifested itself within the courts of appeal. Accordingly, I cannot see how the majority can conclude that *Booker* was an "anomaly" or that a "new constitutional rule[ ] of criminal procedure" had not been declared by the Supreme Court in *Holland*.

Yet the majority dissolves this writ and effectively permits the state to bar application of *Batson v. Kentucky* because of the *Teague* retroactivity principle in the first instance, and simultaneously apply the Supreme Court's rule of *Holland* in violation of the same principle. The state is not able to rebut petitioner's evidence of racial discrimination in the exercise of the peremptory challenges, but the majority now rewards its unconstitutional action by dismissing this case. Such a result is fundamentally unfair and flies in the face of reason. That Petitioner Bell would be able to apply *Batson v. Kentucky* if he were granted a new trial is not the issue. His guilt or innocence is immaterial and not for us to decide. The prosecution committed the injustice that warrants our correction. Accordingly, the district court's order granting the writ of habeas corpus should have been sustained.

Moreover, the majority intimates that this Circuit has engaged in a patently lawless procedural practice for the four years that we followed *Booker*. If the Supreme Court's precedent clearly "disclaimed the application of the fair cross section rule to petit juries" and mandated that conclusion in *Holland*, this majority is effectively saying that the authors of *Booker* and its progeny did not follow their charge to uphold the principles of the Constitution. Because I cannot say that my Brethren engaged in this unconstitutional practice, and the foregoing analysis is mandated by the principles of *Teague v. Lane*, I must DISSENT.

---

1. *Booker* was vacated by the United States Supreme Court and remanded for reconsideration in light of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). This Court reconsidered its decision and then reinstated its judgment for Mr. Booker. *See Booker v. Jabe*, 801 F.2d 871 (6th Cir.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).